## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **KPLER, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-CV-000026** |
| | § | |
| **ANCHOR SPECIALTIES, LTD, dba** | § | |
| **ANCHOR ENERGY SERVICES,** | § | |
| | § | |
| *Defendant.* | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Kpler, Inc. ("*Kpler*") files this Original Complaint against Defendant Anchor Specialties, LTD and respectfully shows the Court as follows:

### I.    PARTIES, JURISDICTION, AND VENUE

1.    Kpler is a corporation organized under the laws of the State of Delaware. Kpler's principal place of business is located in Houston, Texas.

2.    Defendant Anchor Specialties, LTD ("*Anchor*") is a Nigerian private limited company with "operations in West Africa with head offices in Lago, Nigeria, and a represenative office in Houston, Texas."[1] Anchor is domiciled in Nigeria and is a juridical entity under Nigerian law.[2] Anchor's Houston office is located at 10101 S.W. Freeway, Suite 400, Houston, Texas 77078, but Anchor is not registered to do business in the State of Texas according to the Texas Secretary of State. Anchor is represented by counsel in this dispute, Alfred Benoit of Benoit Law,

---

[1] *See* Anchor webite, https://anchorenergy.com.
[2] Companies and Allied Matters Act, ch. 1, §§ 21-22, 29 (Nigeria); *See also Puerto Rico v. Russell & Co.*, 288 U.S. 476, 482 (1933).

PLLC, and he has agreed to accept service of process on behalf of Anchor.

3.     This Court has alienage jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2).  A U.S. citizen's right to sue an alien in federal court arises as a subcategory of diversity jurisdiction from the explicit language of Article 3 of the U.S. Constitution.[3]  Alienage jurisdiction exists in a suit between a U.S. citizen and a citizen or subject or a foreign state when the plaintiff alleges fact showing that the amount in controversy exceed $75,000.00.[4]  Here, alienage jurisdiction exists because Kpler is a citizen of Delaware and Texas[5] and Anchor is a citizen of Nigeria.  The contractual amount owed by Anchor as of the filing of this Complaint is $493,479.45.

4.     Venue is proper in the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of property that is the subject of the action is situated in Harris County.  Specifically, Anchor's only U.S. office is located in Houston and has physical assets to satisfy a judgment against it.  Venue is also proper in the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Kpler's claim occurred in Harris County, Texas.

## II.    STATEMENT OF FACTS

### A.  Initial Contract

5.     On December 10, 2018, Charles Babalola signed a Kpler SaaS Services Order Form on behalf of Anchor (the "***Agreement***").[6]  In compliance with the Agreement, Kpler provided services to Anchor, including Kpler's online suite of intelligence and transparency tools allowing

---

[3] *See JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure, Ltd.*, 536 U.S. 88, 94-95 (2002).
[4] 28 U.S.C.A. § 1332(a).
[5] A corporation is considered a citizen of every U.S. state and foreign state where it is incorporated and the U.S. state or foreign state where it has its principal place of business.  28 U.S.C.A. § 1332(c)(1).
[6] *See* Anchor's executed Kpler SaaS Services Order Form, Exhibit A.

its users to monitor the energy market value chain from various points of view (the "***Services***").

6.      The effective date of the Agreement was December 10, 2018, and the end of the initial service term was December 9, 2019.  Anchor agreed to pay $150,000 for the services during the initial service term and for all services up to and including the last day on which the services were provided.  The Agreement automatically renewed for additional periods of the same duration as the initial service term unless either party requested termination at least thirty (30) days before the end of the then-current term.

7.      On December 6, 2019, Charles Babalola sent an e-mail to Kpler requesting that the payments owed for the renewal period from December 10, 2019 to December 9, 2020, be broken into separate payments.[7]

8.      On December 10, 2019, the Agreement was auto-renewed for the renewal period of December 10, 2019 to December 9, 2020.

9.      Kpler received the agreed payment for the December 10, 2018 through December 9, 2020 service term.

## B. First Renewal Period

10.      On December 10, 2020, the Agreement was auto-renewed for the renewal period of December 10, 2020 to December 9, 2021.  Abib Yussuph, another representative for Anchor, signed a Kpler SaaS Services Renewal Form on March 26, 2021 (the "***Renewal Agreement***").[8] The effective starting date was December 10, 2020, and the end of the service term was December 9, 2021.

---

[7] *See* email from Charles Babalola, December 6, 2019, Exhibit B.
[8] *See* Anchor's Renewal Agreement, Exhibit C.

11.    The Renewal Agreement provided for the following Subscribed Services:

| QTY | PRODUCT | DESCRIPTION | PRICE(Excl. VAT) |
|---|---|---|---|
| 12 | OIL Front-end | Monthly custom file with LNG data relating Nigerian Im-/Exports included for 2020-2021 Renewal Term | USD 75,000.00 |
| 12 | CPP Front-end | | USD 135,000.00 |
| 12 | OIL Excel Add-in | Export Capability into Excel | USD 75,000.00 |
| | | **TOTAL:** | USD 285,000.00 |

12.    The Renewal Agreement provided for the following Payment Schedule:

| INVOICE DATE | INSTALLMENT START DATE | INSTALLMENT END DATE | INSTALLMENT AMOUNT (Excl. TAX) | PAYMENT TERMS |
|---|---|---|---|---|
| Upon Signature of Contract | 10/12/2020 | 28/05/2021 | USD 142,500 | Net 60 |
| 31/05/2021 | 29/05/2021 | 30/07/2021 | USD 71,250 | Net 90 |
| 01/08/2021 | 31/07/2021 | 09/12/2021 | USD 71,250 | Net 90 |

The price quoted here above applies for the Initial Period of the contract. For any Renewal Periods, the price will be adjusted from the start of each Renewal Period by the greater of (i) 3% and (ii) the increase in the European Consumer Prices Index in the 12 months preceding the date of invoice.

13.    The Renewal Agreement includes and incorporates the terms of the initial Agreement, including the auto renewal provision.

## C.  Second Renewal Period and Kpler's Demand

14.    On December 10, 2021, the Renewal Agreement was auto-renewed for the renewal period of December 10, 2021 to December 9, 2022.

15.    Kpler has fulfilled its obligations under the Agreement and Renewal Agreement and has provided services to Anchor as agreed.

16.    Anchor has failed to deliver any payments to Kpler for the first renewal period (December 10, 2020 to December 9, 2021) or for the second renewal period (December 10, 2021 to December 9, 2022).

17.    Despite not paying the agreed sums for the services, Anchor continued to use the services through August 2022.

4

18.     On September 2, 2022, counsel for Kpler sent a pre-suit demand letter by e-mail and certified mail to Anchor's address in Houston and by e-mail and FedEx to Anchor's address in Nigeria demanding payment of $493,479.45 for the services rendered by Kpler to Anchor.  Kpler did not receive any payments in response to the demand letter.  The undersigned counsel for Kpler did receive a response letter from attorney Alfred Benoit of Benoit Law, PLLC confirming he is representing Anchor in this dispute.[9]  He did not dispute the existence of the Agreement or Anchor's obligation to pay.

19.     As of the date of the filing of this Complaint, Anchor remains in breach of the Agreement and Renewal Agreement and has failed to pay the contractual amount owed.  The total amount owed by Anchor as of October 18, 2022 was $493,479.45, exclusive of attorney's fees and costs.

### III.     CAUSES OF ACTION

*1.     Breach of Contract*

20.     Anchor entered into the Agreement with Kpler in 2018 and entered into the Renewal Agreement in 2021.  Anchor consented and accepted the terms of the Agreement and Renewal Agreement as evidenced by Anchor's execution and delivery of the signed Agreements to Kpler and Anchor's use of the services provided by Kpler.  Kpler performed under the terms of the Agreement and Renewal Agreement, whereas Anchor failed to perform its obligations under the Agreement and Renewal Agreement by not making the required scheduled payments.

21.     By executing the Agreement and Renewal Agreement, Anchor agreed that it would pay in full for the services up to and including the last day on which the services were provided.  Anchor also agreed that unpaid amounts are subject to a finance charge of 1.5% per month on any

---

[9] *See* Response letter from Alfred Benoit of Benoit Law, PLLC, Exhibit D.

outstanding balance, or the maximum permitted by law, whichever is lower, plus all expenses of collection and may result in immediate termination of the services.

22.     Because of Anchor's breach, Kpler has incurred damages.  The contractual amount owed by Anchor as of October 18, 2022 was $493,479.45, exclusive of attorney's fees and costs.

## II.     *Quantum Meruit*

23.     A claim of quantum meruit requires proof that (a) valuable services were rendered or materials furnished, (b) for Defendant, (c) which services or materials were accepted by Defendant and used and enjoyed by it, (d) under such circumstances that reasonably notified Defendant that Plaintiff expected to be paid by it.  Recovery on a claim of quantum meruit will be had when non-payment for the services rendered would result in an unjust enrichment to the party benefiting from the work.

24.     Here, Kpler provided valuable services to Anchor as described in the Agreement. Anchor accepted and enjoyed and used the services.  The services included real time cargo intelligence for Nigerian crude and liquefied natural gas (LNG) and other valuable commercial information.  Anchor was reasonably notified that Kpler expected to be paid for these services, as made clear in the Agreement and Renewal Agreement.  Non-payment for the services rendered would result in an unjust enrichment to Anchor, who used and benefited from Kpler's services. Kpler is entitled to recovery of damages pursuant to the Agreement and Renewal Agreement under the doctrine of quantum meruit.

## IV.     <u>CONDITIONS PRECEDENT</u>

25.     All conditions precedent have been performed, have occurred, have been excused, or have been waived.

6

21473162.1

## V.    **ATTORNEY'S FEES**

26.    Anchor's non-payment has made it necessary for Kpler to employ the undersigned attorneys to represent it in this matter.  Kpler seeks and is entitled to court costs and reasonable and necessary attorney's fees pursuant to Texas Civil Practice & Remedies Code § 38.001 because this is a suit for breach of a written contract.  Kpler is also entitled to recover all expenses of collection (including attorney's fees and costs) under the terms of the Agreement and Renewal Agreement between the parties.

### **PRAYER**

WHEREFORE, Kpler prays that Anchor be summoned to appear and that Kpler be awarded:

A.    Judgment against Anchor for its breach of the Agreement and Renewal Agreement;

B.    Judgment against Anchor for recovery of its damages on the basis of quantum meruit;

C.    Judgment against Defendant for all amounts owed under the Agreement and Renewal Agreement, which is $493,479.45, exclusive of attorney's fees and costs;

D.    Reasonable and necessary attorney's fees;

E.    Post-judgment interest at the maximum rate allowed by law;

F.    Costs of suit; and

G.    Such other and further relief, special or general, legal or equitable, as Kpler may be shown justly entitled to receive.

Respectfully submitted,

**McGlinchey Stafford, PLLC**

**By:** _/s/ Thomas W. White, Jr._

> **Emily G. Stroope (Lead Counsel)**
> State Bar No. 24070692
> estroope@mcglinchey.com
> Three Energy Square
> 6688 North Central Expressway
> Suite 400
> Dallas, Texas 75206
> (214) 445-2445 Tel
> (214) 445-2450 Fax
>
> and
>
> **Thomas W. White, Jr.**
> State Bar No. 24102645
> twhite@mcglinchey.com
> 1001 McKinney Street, Suite 1500
> Houston, TX 77002
> (713) 335-2145 Tel
> (713) 520-1025 Fax

**ATTORNEYS FOR PLAINTIFF KPLER, INC.**